**Donny L. HARDY and Plaintiffs,**

v.

**Jeff WELCH; et al., Defendants.**

**Shelia Hardy, Plaintiffs,**

v.

**Jeff Welch; et al., Defendants.**

Nos. CIV.A. 00–T–95–S,
CIV.A. 00–T–96–S.

United States District Court,
M.D. Alabama,
Southern Division.

Sept. 1, 2000.

frey Neal Cotney, Lloyd, Gray & White-head, P.C., Birmingham, AL, for Defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiffs Donny L. Hardy and Shelia Hardy filed these two lawsuits in an Alabama state court against defendants Jeff Welch, Health Strategies, Inc., Alabama Hospitality Association Health Plan, and Bennett & Company, Inc., asserting state-law claims of breach of contract, fraud, bad-faith denial of insurance claim, and the tort of outrage. Bennett & Company, joined by the other defendants, removed these lawsuits to this court under 28 U.S.C.A. §§ 1331 (federal question) and 1441(b) (removal). These lawsuits are currently before the court on the following motions: (1) the Hardys' motions to remand, (2) the defendants' motions to strike state-law claims, and (3) the defendants' motions to strike jury demand. For the reasons that follow, the court will deny the Hardys' motions and grant the defendant's motions.

## I. FACTUAL SUMMARY

The Hardys are husband and wife and own Quality Woodwork, a sole proprietorship in Elba, Alabama.[1] On December 9, 1998, Welch contacted the Hardys in an attempt to sell them an employee benefit plan with the Alabama Hospitality Association (AHA).[2] The AHA created the plan to provide employer sponsored health benefits to AHA members and their employ-

Thadius William Morgan, Jr., Gary Dean Bradshaw, Enterprise, AL, for Plaintiffs.

Robert William Bradford, Jr., Joana S. Ellis, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, Thomas A. Kendrick, Celeste K. Poteat, Norman, Wood, Kendrick & Turner, Joseph E. Stott, Clark & Scott, P.C., Stephen E. Whitehead, Jef-

1. *See* Deposition of Shelia Hardy, taken February 25, 2000, attached to defendant Bennett & Company, Inc.'s brief in support of removal, filed March 31, 2000, at 9–10, 12.

2. *See id.* at 17–18, 20; Affidavit of Larry Bennett, Sr., attached as Exhibit B to defendant Bennett & Company, Inc.'s notice of removal, filed January 31, 2000, ¶¶ 3, 6, 8.

ees.[3] During the Hardys' June 9, 1998, meeting with Welch, Mrs. Hardy completed an application for membership in the AHA and wrote a check to the AHA in the amount of $ 125.00 on Quality Woodwork's account.[4] At that meeting, Mrs. Hardy also completed an employer application and a request for group insurance for the AHA plan.[5]

The AHA plan initially provided benefits to the Hardys and all of Quality Woodwork's employees from June 9, 1998, until December 1, 1998.[6] Quality Woodwork's benefits under the AHA plan were terminated on December 1, 1998, because Quality Woodwork failed to submit a premium payment.[7] Three months later, on February 25, 1999, Mrs. Hardy re-enrolled Quality Woodwork in the AHA plan by completing and submitting a second employer application and request for group insurance.[8] From March 1, 1999, until sometime in June 1999, the AHA plan again provided benefits to the Hardys and all of Quality Woodwork's employees.[9] During each of these two coverage periods, Quality Woodwork paid 100% of the AHA plan's premiums for Quality Woodwork's employees.[10] The defendants gave the Hardys a book describing the AHA plan's benefits.[11]

In or around June 1998, Mrs. Hardy submitted a claim for benefits under the AHA plan.[12] Almost one year later, in or around May 1999, Mr. Hardy submitted a claim for benefits under the plan.[13]

On December 29, 1999, the Hardys each filed a lawsuit against Welch, Health Strategies, Alabama Hospitality Association Health Plan, and Bennett & Company, in the Circuit Court of Coffee County, Alabama. Each lawsuit alleges identical Alabama state-law claims of breach of contract, fraud, bad-faith denial of insurance claim, and the tort of outrage. On January 31, 2000, Bennett & Company, joined the other defendants and removed each lawsuit to this court. The Hardys each filed a motion to remand, and, in each lawsuit, each defendant filed a motion to strike state-law claims and a motion to strike jury demand.

## II. REMAND STANDARD

The party seeking removal has the burden of establishing federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996), *cert. denied,* 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997). However, because, generally speaking, the removal statutes are strictly construed against removal, all doubts about removal must be resolved in favor of

---

3. *See Id.,* ¶ 3.

4. *See id.,* attachment 1.

5. *See id.* ¶ 6 and attachment 2; Deposition of Shelia Hardy, taken February 25, 2000, at 23–25.

6. *See* Affidavit of Larry Bennett, Sr. ¶ 6.

7. *See id.;* Deposition of Shelia Hardy, taken February 25, 2000, at 23–25, 32.

8. *See* Affidavit of Larry Bennett, Sr. ¶ 6 and attachment 4; Deposition of Shelia Hardy, taken February 25, 2000, at 32.

9. *See* Affidavit of Larry Bennett, Sr. ¶ 6 and attachment 4; Deposition of Shelia Hardy, taken February 25, 2000, at 51–52.

10. *See id.,* at 28–29, 31; Affidavit of Larry Bennett, Sr. ¶ 7.

11. *See* Deposition of Shelia Hardy, taken February 25, 2000, at 44, 61.

12. *See* Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, ¶¶ 7–8; Affidavit of Larry Bennett, Sr. ¶ 9.

13. *See* Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, ¶¶ 7–8; Affidavit of Larry Bennett, Sr. ¶ 9.

remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994). A defendant may submit affidavits, depositions, or other evidence to support removal. *See Lott v. Metropolitan Life Ins. Co.,* 849 F.Supp. 1451, 1452 (M.D.Ala.1993) (Thompson, C.J.).

A lawsuit filed in state court may be removed to federal court based on either diversity or federal-question jurisdiction. *See Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1373 (11th Cir.1998). Federal-question jurisdiction exists if the plaintiff's suit arises under "the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331; *see also Pacheco,* 139 F.3d at 1373. Whether a complaint 'arises under' federal law—or, put another way, presents a 'federal question'—must be determined from the face of a plaintiff's complaint. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–11, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). This requirement, which is known as the 'well-pleaded complaint' rule, applies to a defendant's right to removal, with the determining factor being whether the plaintiff's complaint, not the removal petition, presents a federal question. *See id.* at 10 n. 9, 103 S.Ct. at 2847 n. 9. Moreover, the plaintiff "is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), and thus has the prerogative to rely on state law alone, although both state and federal law may give him a cause of action. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (stating that a plaintiff may "avoid federal jurisdiction by exclusive reliance on state law."). Therefore, the fact that the plaintiff has elected to pursue his claim under state law alone does not justify removal, even if the plaintiff also has an unpursued claim under federal law.

## III. DISCUSSION

The defendants contend as follows: The AHA plan is an 'employee welfare benefit plan' as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461, commonly known as ERISA; the Hardys are participants in the AHA plan; and the Hardys' claims are for the payment of benefits under the AHA plan.[14] As a result, according to the defendants, the Hardys' state-law claims are preempted by ERISA and the court has federal-question jurisdiction over these lawsuits.[15]

The Hardys disagree. The Hardys argue that, as the sole proprietors of Quality Woodwork, they are 'employers,' not 'employees,' under ERISA.[16] Therefore, according to the Hardys, ERISA is not applicable to their claims.[17] The Hardys accordingly argue that the court does not have subject-matter jurisdiction over these lawsuits and that remand is proper.[18]

---

14. *See* Defendant Bennett & Company, Inc.'s notices of removal, filed January 31, 2000, ¶¶ 7–11.

15. *See id.* ¶¶ 2, 5–6, 11.

16. *See* Plaintiff Donny L. Hardy's brief in support of motion to remand, filed March 20, 2000, at 3–4; Plaintiff Shelia Hardy's brief in support of motion to remand, filed March 20, 2000, at 3–4.

17. *See* Plaintiff Donny L. Hardy's brief in support of motion to remand, filed March 20, 2000, at 3–4; Plaintiff Shelia Hardy's brief in support of motion to remand, filed March 20, 2000, at 3–4.

18. *See* Plaintiff Donny L. Hardy's brief in support of motion to remand, filed March 20, 2000, at 5; Plaintiff Shelia Hardy's brief in support of motion to remand, filed March 20, 2000, at 5.

Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C.A. § 1001(b). Preemption based on ERISA may take one of two forms. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir.1999); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir.1998). The first is known as 'defensive' preemption. *See Butero*, 174 F.3d at 1212. Defensive preemption originates in ERISA's express preemption provision, 29 U.S.C.A. § 1144(a).[19] *See id.* "Defensive preemption provides only an affirmative defense to certain state-law claims." *Id.* As an affirmative defense, defensive preemption does not appear on the face of a well-pleaded complaint. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir.1991). Therefore, defensive preemption does not arise under the laws of the United States and cannot authorize removal to federal court. *See Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546; *Whitt*, 147 F.3d at 1329. In the instant cases, because the Hardys have alleged only state-law claims, the defendants' removal of these lawsuits would be improper to the extent that removal was based on defensive preemption. *See Whitt*, 147 F.3d at 1329.

The second form of ERISA preemption is known as 'complete preemption' or 'superpreemption.' *See Butero*, 174 F.3d at 1211; *Whitt*, 147 F.3d at 1329. Superpreemption qualifies the well-pleaded complaint rule. *See Whitt*, 147 F.3d at 1329. "Where Congress preempts an area of law so completely that any complaint raising claims in that area is necessarily federal in character, super preemption applies, and federal jurisdiction exists, even if the face of the complaint does not plead federal claims." *Id.* Therefore, federal courts have subject-matter jurisdiction over state-law claims that have been superpreempted, and defendants may remove to federal court those actions that contain such claims. *See Butero*, 174 F.3d at 1212; *Whitt*, 147 F.3d at 1329. ERISA superpreemption arises from Congress's creation of a comprehensive remedial scheme in ERISA, 29 U.S.C.A. § 1132, for loss or denial of employee benefits. *See Butero*, 174 F.3d at 1211.

In *Butero*, the Court of Appeals for the Eleventh Circuit recently held that "ERISA superpreemption exists only when the 'plaintiff is seeking relief that is available under ... § 1132(a).'"[20] *Id.* at 1212 (quoting *Whitt*, 147 F.3d at 1330). More specifically, the *Butero* court articulated a four-part test to determine whether ERISA superpreemption exists. First, there must be a relevant ERISA plan. *See id.* Second, the plaintiff must have standing to sue under the plan. *See id.* Third, the defendant must be an ERISA entity. *See id.* And fourth, the complaint must seek compensatory relief akin to that available under § 1132(a), which will often be a claim for benefits due under the plan. *See id.* Whether the court has removal jurisdiction over the Hardys' lawsuits de-

---

**19.** "[Generally,] the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C.A. § 1144(a).

**20.** In relevant part, § 1132(a) allows a civil action to be brought by a plan beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B).

pends on whether each of these four elements is satisfied. The court will now discuss whether each element is satisfied in these cases.

■ The first element of the *Butero* test asks whether an ERISA plan exists. An ERISA plan means either an 'employee welfare benefit plan' or an 'employee pension benefit plan.' *See* 29 U.S.C.A. § 1002(3); *Whitt*, 147 F.3d at 1330. An 'employee welfare benefit plan,' the only one of the two types of ERISA plans relevant in these cases, is defined as

> "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)."

29 U.S.C.A. § 1002(1). In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (en banc), the Court of Appeals for the Eleventh Circuit separated this statutory definition of 'employee welfare benefit plan' into the following five requisite elements: (1) a 'plan, fund, or program,' (2) established or maintained, (3) by an employer or by an employee organization, or

by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries. *See* 688 F.2d at 1371; *see also Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102, 1104 (11th Cir.1999). The court will analyze whether the AHA plan satisfies these five elements.

■ The first element of the statutory definition is the existence of a 'plan, fund, or program.' An ERISA plan, fund, or program "exists whenever there are 'intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits.'" *Butero*, 174 F.3d at 1214 (quoting *Donovan*, 688 F.2d at 1372). Here, the intended benefits are those paid if a Quality Woodwork employee or an employee's dependent qualifies for benefits under the AHA plan. The intended beneficiaries are Quality Woodwork's employees and their dependents. The source of financing is Quality Woodwork, which paid 100 % of the AHA plan's premiums for Quality Woodwork's employees.[21] Finally, the Hardys received a copy of a book describing the AHA plan's benefits,[22] from which "a 'reasonable person' could figure out procedures for receiving benefits." *Id.* In fact, the Hardys did figure out the procedures for receiving benefits because each of them filed a claim for benefits under the AHA plan. Therefore, the AHA plan is an ERISA plan, fund, or program.

■ The second element is that the plan, fund, or program is established or maintained. "A plan is 'established' when

---

**21.** *See* Deposition of Shelia Hardy, taken February 25, 2000, at 28–29, 31; Affidavit of Larry Bennett, Sr. ¶ 7.

**22.** *See* Deposition of Shelia Hardy, taken February 25, 2000, at 44, 61.

there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." *Id.* Bennett & Company argues that a plan was established here because Mrs. Hardy, as owner of Quality Woodwork, engaged in discussions with Welch regarding the procurement of the AHA plan for employees of Quality Woodwork; Mrs. Hardy applied for the AHA plan on behalf of Quality Woodwork; Mrs. Hardy enrolled Quality Woodwork in the AHA plan; Quality Woodwork solicited enrollment in the AHA plan from its employees; and Quality Woodwork remitted premium checks on its business account.[23] Bennett & Company's assertions are substantiated by the deposition of Mrs. Hardy[24] and the affidavit of Larry Bennett, Sr., the president of Bennett & Company.[25]

In *Butero,* the appellate court found that a plan was 'established' when the plaintiff's employer consulted an insurance agent, selected the terms of the group policy it wished to purchase for its employees, completed an application form for the policy, solicited enrollments from its employees, collected money through payroll deductions, and remitted premium checks to the insurer. *See id.* The facts alleged in Mrs. Hardy's deposition and Bennett's affidavit are very similar to the facts that the *Butero* court found sufficient to the establishment of a plan. In other words, the facts in Mrs. Hardy's deposition and Bennett's affidavit indicate that there has been some degree of implementation by Quality Woodwork going beyond a mere intent to confer a benefit. Therefore, this court

finds that a plan has been established here.

Finally, the court finds that the third, fourth, and fifth *Donovan* elements are clearly satisfied. The AHA plan was established by an employer, Quality Woodwork,[26] for the purpose of providing medical benefits to participants or their beneficiaries, namely, Quality Woodwork employees.[27] Therefore, the AHA plan is an 'employee welfare benefit plan.'

Based on the foregoing analysis, the court finds that the first element of the *Butero* test—the existence of a relevant ERISA plan—is satisfied. The court will now discuss the remaining three elements of the *Butero* test.

 Satisfaction of the second element of the *Butero* test requires that the plaintiff have standing to sue under the plan. ERISA's civil enforcement section allows two categories of individuals to sue for benefits under an ERISA plan: plan beneficiaries and plan participants. *Engelhardt v. Paul Revere Life Ins. Co.,* 139 F.3d 1346, 1351 (11th Cir.1998). A 'beneficiary' is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8).

 As discussed, the AHA plan is an ERISA plan. Furthermore, it is undisputed that the AHA plan provided benefits to eligible employees of participating employers, Quality Woodwork was a participating employer, and the Hardys were eligible employees designated to receive

---

**23.** *See* Defendant Bennett & Company, Inc.'s brief in support of removal, filed March 31, 2000, at 8.

**24.** *See* Deposition of Shelia Hardy, taken February 25, 2000, at 17–20, 22–25, 28–29, 31, 48, 51.

**25.** *See* Affidavit of Larry Bennett, Sr. ¶¶ 6–8.

**26.** *See* Deposition of Shelia Hardy, taken February 25, 2000, at 9–10, 23.

**27.** *See id.* at 22–23

benefits under the AHA plan.[28] These factors plus the fact that the Hardys filed for benefits under the AHA plan confirm the Hardys' status as AHA plan beneficiaries. *See Butero*, 174 F.3d at 1212–13 (finding that a participant in an ERISA plan is a potential beneficiary and has standing to assert a variety of claims under § 1132(a), specifically those enumerated in 29 U.S.C.A. § 1132(a)(1), (2), (3), and (4)); *Engelhardt*, 139 F.3d at 1351 (finding that a plaintiff was a 'beneficiary' when there was an ERISA plan, the plan provided benefits to eligible employees of participating employers, the plaintiff's employer was a participating employer, the plaintiff was an eligible employee designated to receive benefits under the plan, and the plaintiff filed a claim for benefits under the plan). Therefore, the second *Butero* element is satisfied.

The Hardys argue that they do not have standing to sue under the AHA plan, and thus the second *Butero* element is not satisfied because they are 'employers,' not 'employees,' under ERISA.[29] The court disagrees.

In *Engelhardt*, relying on ERISA's anti-inurement provision, 29 U.S.C.A. § 1103(c)(1),[30] the plaintiff argued the he cannot be an ERISA beneficiary because he is a shareholder of a professional corporation, the relevant employer, and thus an employer, not an 'employee.' *See id.* The *Engelhardt* court disagreed. It determined that ERISA's anti-inurement provision addresses plan assets and is designed to guard against self-dealing, imprudent investing, and misappropriation of plan funds by plan administrators and employers. *See id.* The *Engelhardt* court found that any recovery of benefits under the plan by the plaintiff would come from the funds of the insurer, not the employer. *See id.* Therefore, the appellate court concluded that there was no danger of self-dealing or misappropriation by the plaintiff. *See id.* The *Engelhardt* court, relying on the plain language of the statute, accordingly held that the plaintiff's status as a shareholder does not preclude him from being a beneficiary. *See id.*

Admittedly, the status at issue in *Engelhardt* was that of a shareholder. But other federal appellate courts, using essentially the same plain-language reasoning as that used in *Engelhardt*, have similarly held that partners, such as the Hardys here, also qualify as ERISA beneficiaries. *See, e.g., Wolk v. Unum Life Insurance of America*, 186 F.3d 352 (3d Cir.1999) (partner was beneficiary and had standing under ERISA), *cert. denied*, 528 U.S. 1076, 120 S.Ct. 792, 145 L.Ed.2d 668 (2000); *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 409 (9th Cir.1995) (same); *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432, 1434 (9th Cir.1990) (same).

For the same reasons, in the cases at bar, the Hardys' status as owners of Quality Woodwork does not preclude them from being beneficiaries under the AHA plan.[31]

---

**28.** *See* Affidavit of Larry Bennett, Sr., Exs. 6–8.

**29.** *See* Plaintiff Donny L. Hardy's brief in support of motion to remand, filed March 20, 2000, at 3–4; Plaintiff Shelia Hardy's brief in support of motion to remand, filed March 20, 2000, at 3–4.

**30.** "[Generally,] the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C.A. § 1103(c)(1).

**31.** The court recognizes that its decision in *Dorand v. Security Connecticut Life Insur. Co.*, 1996 WL 819800 (M.D.Ala.1996) (Thompson, J.), is to the contrary. However, *Dorand* has been severely undermined by *Engelhardt* and is no longer supportable in light of *Wolk*.

■ The third *Butero* element—the existence of an ERISA entity—is also satisfied. Health Strategies, the administrator of the AHA plan,[32] is an ERISA entity because "[i]t could 'control . . . the payment of benefits' and the 'determination of [the Hardys'] rights' under [the AHA plan]." *Butero*, 174 F.3d at 1213 (quoting *Morstein v. National Ins. Services, Inc.*, 93 F.3d 715, 723 (11th Cir.1996) (en banc)).

■ Finally, regarding the fourth element, the court finds that the damages the Hardys seek are akin to relief available under § 1132(a). In *Butero*, the plaintiff filed a complaint in state court alleging state-law claims of breach of contract, bad-faith refusal to pay, fraud in the inducement, and three duplicative counts of fraud against an insurance company and its employees for non-payment of benefits allegedly due under a life insurance policy. *See id.* at 1211. The defendants removed the lawsuit to federal court, alleging ERISA superpreemption. *See id.* The Court of Appeals for the Eleventh Circuit determined that the plaintiff's complaint sought compensatory relief akin to that available under § 1132(a) because each claim pursued payment of the life insurance benefit. *See id.* at 1213. "[W]e have held that claims against an insurer for fraud and fraud in the inducement to purchase a policy are in essence claims 'to recover benefits due to [the beneficiary] under the terms of the plan.' " *Id.* (quoting 29 U.S.C.A. § 1132(a)(1)(B) and citing *Engelhardt*, 139 F.3d at 1353; *Franklin v. QHG*

*of Gadsden, Inc.*, 127 F.3d 1024, 1029 (11th Cir.1997)). The *Butero* court also determined that "the claims here of bad faith refusal to pay and breach of contract both pursue the same relief as the fraud claims—payment of the life insurance benefit. . . . [T]herefore . . . all of Butero's claims are properly recast as claims for benefits due under [the] plan." *Id.*

In the cases at bar, the Hardys seek, as did the plaintiff in *Butero*, compensatory damages for breach of contract, fraud, and bad-faith refusal to pay.[33] The Hardys' breach-of-contract claims allege that "Plaintiff has repeatedly demanded payment for his[ or her] claims, which are covered by the [AHA plan] issued to Plaintiff by Defendants, but despite such demands, Defendants have unlawfully and arbitrarily refused to pay for same or any part thereof."[34] The Hardys further allege that "Plaintiff has been injured and damaged as a proximate result of the above complained of refusal to pay by Defendants."[35] In other words, the Hardys' breach-of-contract claims seek payment of benefits allegedly due to the Hardys under the AHA plan. *See id.*

Similarly, the Hardys' claims for fraud and bad faith stem from representations that the defendants allegedly made to the Hardys regarding benefits available under the AHA plan. Specifically, the Hardys' fraud claims allege that "Defendants represented to Plaintiff that his[ or her] valid claims under the health policy would be paid by Defendants,"[36] but the defendants

---

**32.** *See* Affidavit of Larry Bennett, Sr. ¶¶ 4–5.

**33.** *See* Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, at 1–3; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, at 1–3.

**34.** Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, ¶ 9; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, ¶ 9.

**35.** Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, ¶ 10; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, ¶ 10.

**36.** Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, ¶ 12; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, ¶ 12.

denied the Hardys' valid claims.[37] The Hardys' bad-faith claims allege that "Defendants refusal to pay Plaintiff's claims constitutes denial of said claim without lawful justification."[38] Consequently, as in *Butero*, the Hardys' fraud and bad faith claims seek the same relief as do their breach of contract claims. Therefore, all of these claims are essentially claims "to recover benefits due to [the Hardys] under the terms of the plan," and are, therefore, "properly recast as claims for benefits due under [the] plan." *Id.; see also Franklin*, 127 F.3d at 1029 (holding that a plaintiff's state-law claims of misrepresentation, suppression, deceit, and fraudulent deceit had a direct connection to the administration of medical benefits under an ERISA plan and thus were superpreempted by ERISA).

Unlike the plaintiff in *Butero*, the Hardys also allege claims of the tort of outrage. The Hardys' outrage claims state that the defendants' alleged breach of contract, fraud, and bad faith were outrageous and caused the Hardys to suffer emotional distress.[39] As such, these claims, like the Hardys' breach-of-contract, fraud, and bad-faith claims, are essentially claims "to recover benefits due to [the Hardys] under the terms of the plan." *Butero*, 174 F.3d at 1213. Therefore, the Hardys' outrage claims are "properly recast as claims for benefits due under [the] plan." *Id.* For these reasons, the fourth element of the *Butero* test is satisfied.[40]

Because each element of the *Butero* test is satisfied the court finds that the Hardys' state-law claims are superpreempted by ERISA. Therefore, the court has removal jurisdiction over the Hardys' lawsuits.

▆▆▆ The defendants have moved to strike the Hardys' state-law claims. Resolution the issue of whether the Hardys' state-law claims should be stricken turns on whether the Hardys' state-law claims are defensively preempted. "Defensive preemption defeats claims that seek relief

---

**37.** Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, ¶ 15; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, ¶ 15.

**38.** Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, ¶ 19; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, ¶ 19.

**39.** Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, ¶¶ 26–28; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, ¶¶ 26–28.

**40.** The Hardys seek punitive damages, as well as compensatory damages. *See* Plaintiff Donny L. Hardy's amended complaint, filed March 9, 2000, at 3–4; Plaintiff Shelia Hardy's amended complaint, filed March 9, 2000, at 3–4. However, for at least three reasons, the fact that the Hardys seek punitive damages does not affect the court's analysis under the fourth *Butero* element. First, as discussed, the Hardys' amended complaints seek compensatory relief akin to that available under § 1132(a). *Butero* does not expressly or implicitly state that a plaintiff's complaint must seek *only* compensatory relief, but rather that such relief must be sought in the complaint, in order to satisfy the fourth element. Second and similarly, the Hardys' claims for punitive damages are wholly derivative of their claims for compensatory damages. In other words, the Hardys' claims for compensatory damages are the centerpieces of their lawsuits. And third, in *Engelhardt*, which along with *Franklin* is cited by the *Butero* court as the authority for its creation of the fourth element of its test, the plaintiff, like the Hardys, sought compensatory and punitive damages. *See* 139 F.3d at 1354. Specifically, the *ad damnum* clause of the *Engelhardt* plaintiff's complaint demanded " 'judgment against [Paul Revere] in such amount of compensatory damages as a jury will award, a separate amount of punitive damages, and his costs.' " *Id.* The *Engelhardt* court determined that "Engelhardt is thus alleging, in effect, that the measure of his compensatory damages is the amount of benefits wrongfully withheld by Paul Revere" and thus he " 'seeks relief that is available under § 1132(a).' " *Id.*

under state-law causes of action that 'relate to' an ERISA plan" *Id.* at 1215 (quoting 29 U.S.C.A. § 1144(a)). Consequently, state-law claims that are defensively preempted by ERISA must be dismissed. *See id.* at 1212 ("[D]efensive preemption does require dismissal of state-law claims.").

In *Butero*, the Court of Appeals for the Eleventh Circuit held that the plaintiff's state-law claims of breach of contract, fraud, and bad faith 'relate to' an ERISA plan. *See id.* at 1215 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987)). The *Butero* court reasoned that "[i]f the plaintiff's claims are superpreempted," *id.*, which they are, "then they are also defensively preempted." *Id.* Therefore, the *Butero* court affirmed the district court's dismissal of these claims. *See id.*

■ As discussed, like the plaintiff's state-law claims in *Butero*, the Hardys' claims of breach of contract, fraud, bad faith, and outrage are superpreempted by ERISA. Therefore, these claims 'relate to' an ERISA plan and are defensively preempted as well. *See id.*

The Hardys argue that their bad-faith claims are exempted from defensive preemption under ERISA's savings clause, *see* 29 U.S.C.A. § 1144(b)(2)(A).[41] ERISA's savings clause exempts from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C.A. § 1144(b)(2)(A). "The savings

clause preserves the right of States, given by the McCarran–Ferguson Act, to regulate the 'business of insurance.'" *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1453 (5th Cir.1991). The Hardys rely on *UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), to support their argument.[42]

■ In *UNUM*, the United States Supreme Court held that California's notice-prejudice rule[43] "is a 'law ... which regulates insurance,' and is therefore saved from preemption by ERISA." 526 U.S. at 364, 119 S.Ct. at 1385. Unlike the case at bar, *UNUM* originated in federal court and, therefore, superpreemption was not at issue. In contrast, here, the court's subject matter jurisdiction is based on the finding that the Hardys' state-law claims are superpreempted by ERISA and thus removable to this court. State-law claims that are superpreempted by ERISA are, by necessity, defensively preempted as well. *See Butero*, 174 F.3d at 1215. Therefore, even if the Hardys' bad-faith claims satisfy ERISA's savings clause, they are still superpreempted and thus cannot proceed. *See Parra v. John Alden Life Ins. Co.*, 22 F.Supp.2d 1360, 1364–65 (S.D.Fla.1998) (finding that even though the plaintiff's state-law claim satisfied ERISA's savings clause it was due to be dismissed because it was superpreempted by ERISA).

**41.** *See* Plaintiff Donny L. Hardy's reply brief on defendant's motion to strike state-law claims and motion to strike jury demand, filed March 31, 2000, at 3–7; Plaintiff Shelia Hardy's reply brief on defendant's motion to strike state-law claims and motion to strike jury demand, filed March 31, 2000, at 3–7.

**42.** *See* Plaintiff Donny L. Hardy's reply brief on defendant's motion to strike state-law claims and motion to strike jury demand, filed March 31, 2000, at 4, 6; Plaintiff Shelia Har-

dy's reply brief on defendant's motion to strike state-law claims and motion to strike jury demand, filed March 31, 2000, at 4, 6.

**43.** California's notice-prejudice rule provided that an insurer cannot avoid liability although the proof of claim is untimely, unless the insurer shows it was prejudiced by the delay. *See UNUM Life Ins. Co. of Am.*, 526 U.S. at 364, 119 S.Ct. at 1384.

## IV. CONCLUSION

For the foregoing reasons, it is the ORDER, JUDGMENT, and DECREE of this court that plaintiffs Donny L. Hardy's and Shelia Hardy's motions to remand, filed February 15, 2000, are denied.

It is further ORDERED that the following motions are granted: defendant Bennett & Company, Inc.'s motions to strike state-law claims, filed January 31, 2000; defendant Jeff Welch's motions to strike state-law claims, filed February 22, 2000; defendant Alabama Hospitality Association's motions to strike state-law claims, filed March 2, 2000; and defendant Health Strategies, Inc.'s motions to strike state-law claims, filed March 13, 2000. Plaintiffs may amend their pleadings to include ERISA claims.

It is further ORDERED that the following motions are granted: defendant Bennett & Company's motions to strike jury demand, filed January 31, 2000; defendant Jeff Welch's motions to strike jury demand, filed February 22, 2000; defendant Alabama Hospitality Association's motions to strike jury demand, filed March 2, 2000; and defendant Health Strategies, Inc.'s motions to strike jury demand, filed March 13, 2000.

The clerk of the court is DIRECTED to provide a copy of this order to counsel for all parties by facsimile transmittal.