[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 14, 2003
THOMAS K. KAHN
CLERK**

No. 02-14740

D.C. Docket No. 01-08027-CV-ZLOCH

ROBERT STERN,

Plaintiff-Appellant,

versus

INTERNATIONAL BUSINESS
MACHINES, (IBM), a New York
corporation,

Defendant-Appellee.

Appeal from the United States District Court for the
Southern District of Florida

(April 14, 2003)

Before HULL, MARCUS and FARRIS[*], Circuit Judges.

FARRIS, Circuit Judge:

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Plaintiff Robert Stern, supported by *amicus curiae* the Secretary of Labor, contends that this matter was improperly removed to federal court because his employer's sickness/accident program is exempted by regulation from being considered a "welfare benefits plan" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001-1461. We agree. We vacate the summary judgment order, reverse the order denying Stern's motion to remand, and remand with an instruction to return this case to the state court.

## I

In 1999, Robert Stern, an IBM employee, injured his hand, which rendered him unable to work. IBM has a "Sickness and Accident Income Plan," which provides up to 52 weeks of an employee's "regular salary" when he is unable to work due to sickness or an accident. The IBM Program defines "unable to work" as "unable to perform the duties of the job you held at the time of your sickness or accident, or the duties of any other job that IBM determines that your are capable of performing." IBM makes payments to employees who qualify for the program out of the company's general assets.

After IBM discontinued paying him Program benefits, Stern sued in state court for breach of his employment agreement. IBM removed the case to the

federal district court, contending that the IBM Program is an ERISA "welfare benefit plan." IBM argued that because the Program constitutes an ERISA welfare benefits plan, the Act preempts Stern's state law action. IBM then moved to dismiss the complaint for failure to state a claim under ERISA.

The district court denied Stern's motion to remand. Without discussing whether the Program constitutes a "payroll practice" specifically exempted from ERISA by 29 C.F.R. § 2510.3-1(b)(2), the court found the IBM Program to be an ERISA plan. It granted IBM's motion to dismiss the state complaint and gave Stern leave to file an amended complaint asserting claims under ERISA. The court later found that IBM had not violated ERISA and granted summary judgment in favor of IBM. Stern appeals the court's denial of his motion to remand and is supported by *amicus curiae* the Secretary of Labor. We review *de novo* the orders denying Stern's motion to remand to state court and granting IBM's motion for summary judgment. *See Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065, 1068 (11th Cir. 2001) (removal jurisdiction); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (summary judgment).

## II

ERISA regulates "employee welfare benefit plans," which include plans that provide employees "benefits in the event of sickness, accident, [or] disability." 29

3

U.S.C. § 1002(1).  ERISA also broadly preempts state laws relating to any employee benefit plan.  29 U.S.C. § 1144(a).  However, the Secretary of Labor has promulgated a regulation that excludes certain "payroll practices" from the application of ERISA.  That regulation provides that an "employee benefit welfare plan" shall not include:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons . . . .

29 C.F.R. § 2510.3-1(b)(2).  The sole legal question presented here—one not considered by the district court—is whether IBM's Program is a payroll practice that is exempted from ERISA's coverage.

Under 28 U.S.C. § 1441(a), subject to certain exceptions that are not applicable here, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant" to federal court.  In "federal question" cases such as the one at bar, the "well-pleaded complaint rule" holds that a federal defense to a state law claim generally is insufficient to satisfy the requirements of 28 U.S.C. § 1331.  Instead, the federal question must "necessarily appear[] in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of

4

avoidance of defenses which it is thought the defendant may interpose."

*Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989); *see also*

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Taylor v. Anderson*, 234

U.S. 74, 75-76 (1914); *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152-54

(1908).  As we have said in *Whitt v. Sherman Int'l Corp.*, "a case does not arise

under federal law unless a federal question is presented on the face of the

plaintiff's complaint."  147 F.3d 1325, 1329 (11th Cir. 1998) (citing *Kemp v. Int'l*

*Bus. Machs. Corp.*, 109F.3d 708, 712 (11th Cir. 1997)).

As binding as the "well-pleaded complaint rule" is, however, it permits an

extremely narrow exception in cases implicating the doctrine of complete

preemption.  As we recently explained in *Geddes v. Am. Airlines, Inc.*:

> Preemption is the power of federal law to displace state law
> substantively.  The federal preemptive power may be complete,
> providing a basis for jurisdiction in the federal courts, or it may be
> what has been called "ordinary preemption," providing a substantive
> defense to a state law action on the basis of federal law.  More
> specifically, ordinary preemption may be invoked in both state and
> federal court as an affirmative defense to the allegations in a
> plaintiff's complaint.  Such a defense asserts that the state claims
> have been substantively displaced by federal law.  Complete
> preemption, on the other hand, is a doctrine distinct from ordinary
> preemption.  Rather than constituting a defense, it is a narrowly
> drawn jurisdictional rule for assessing federal removal jurisdiction
> when a complaint purports to raise only state law claims.  It looks
> beyond the complaint to determine if the suit is, in reality, purely a
> creature of federal law, even if state law would provide a cause of

action in the absence of the federal law, thus creating the federal question jurisdiction requisite to removal to federal courts.

321 F.3d 1349, 1352-53 (11th Cir. 2003) (internal punctuation and citations omitted); *see also Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090 (11th Cir. 2002) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211-12 (11th Cir. 1999) (describing the doctrine of "complete" or "super preemption"); *Whitt*, 147 F.3d at 1329-30 (same).

Although the doctrine of complete preemption is extremely limited, and has been found by the Supreme Court to exist in only two substantive contexts, one of these is section 502 of ERISA, 29 U.S.C. § 1132(a). *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987) ("[T]his [ERISA] suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress."); *Anderson v. H & R Block, Inc.*, 287 F.3d 1038, 1042 (11th Cir. 2002). Accordingly, if Stern "is seeking relief that is available under 29 U.S.C. § 1132(a)," then the district court was correct to "recharacterize [his] claim as an ERISA claim, and removal jurisdiction exist[ed]." *Whitt*, 147 F.3d at 1330. "Conversely, if [Stern] is not seeking relief that is

6

available under section 1132(a), no federal question jurisdiction exist[ed] and the district court erred by asserting jurisdiction over this action. *Id.*

The IBM Program fits within the express terms of the Secretary's payroll practices regulation. It pays out of IBM's general assets an employee's normal compensation during periods when the employee is physically or mentally unable to work. The Secretary is specifically authorized to define ERISA's "accounting, technical and trade terms," 29 U.S.C. § 1135, and her reasonable views are given deference by the courts. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). The Secretary contends that the IBM Program is covered by the payroll practices regulation, a view consistent with numerous advisory opinions on sick leave and disability plans analogous to the IBM Program. *See* Department of Labor Advisory Opinion 93-27A (Oct. 12, 1993); Department of Labor Advisory Opinion 93-20A (July 16, 1993); Department of Labor Advisory Opinion 93-02A (Jan. 12, 1993); Department of Labor Advisory Opinion 92-18A (Sept. 30, 1992). Although such opinion letters are not binding, the views of the agency entrusted with interpreting and enforcing ERISA carry considerable weight. *See Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991). Put bluntly, for IBM to prevail, it must show the Secretary's application of

the payroll practices regulation to the Program to be unreasonable.[1] *See, e.g.*,

*Massachusetts v. Morash*, 490 U.S. 107, 120-21 (1989) ("It is sufficient for this

case that the Secretary's determination that a single employer's administration of a

vacation pay policy from its general assets does not possess the characteristics of a

welfare benefit plan constitutes a reasonable construction of the statute.")  This

IBM cannot do.

> The Supreme Court has discussed the primary purpose of ERISA:
>
> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. To that end, it established extensive reporting, disclosure, and fiduciary requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator.  Because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employee's control, they present none of the risks that ERISA is intended to address.  If there is a danger of defeated expectations, it is no different from the danger of defeated expectations of wages for services performed—a danger Congress chose not to regulate in ERISA.

*Morash*, 490 U.S. at 115 (internal citation omitted).  Every decision to interpret

the payroll practices regulation since *Morash* supports the application of § 2510.3-

1(b) to IBM's Program.  In *Alaska Airlines, Inc. v. Oregon Bureau of Labor*, 122

---

[1] IBM challenges the Secretary's interpretation of the payroll practices regulation but not the Secretary's authority to promulgate it.

F.3d 812, 815 (9th Cir. 1997), the Ninth Circuit held that an employer's payment of sick leave to its employees, out of the general assets of the corporation, constituted an exempted "payroll practice" rather than an employee welfare benefit plan covered by ERISA. *See also Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137, 1142 (9th Cir. 2002) (finding sick and vacation policies paid from general assets to be payroll practices). In *McMahon v. Digital Equip. Corp.*, 162 F.3d 28 (1998), the First Circuit determined that a program that paid an employee's salary while he was disabled was an ERISA plan, but only because it was partially funded from sources outside of the employer's general assets. "Where an employer pays occasional, temporary benefits from its general assets, there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits." *Id.* at 36. In *Capriccioso v. Henry Ford Health Sys.*, No. 99-1369, 2000 WL 1033030, at *2 (6th Cir. July 17, 2000) (unpublished), the Sixth Circuit found that a program that paid full salary to disabled employees was a payroll practice because the salary was paid out of the employer's general assets. *See also Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372, 376 (2d Cir. 1987) (holding, in pre-*Morash* case, "that from the payment of traditional sick leave and vacation wages out of an employer's general operating assets, there do not arise the evils Congress intended to address") (internal quotation omitted).

9

The district court found ERISA coverage by relying on a cursory citation to *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) (en banc), but that case does not support IBM's position in light of the clear applicability of the payroll practices regulation. In *Donovan*, this court prescribed general guidelines for resolving the threshold question about the existence of an ERISA plan: "[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373. *Donovan* provides a useful framework for examining, in light of all circumstances, whether an ERISA plan exists when that question is in doubt. However, neither *Donovan* nor its progeny address the issue here, when a program would clearly qualify as an ERISA plan *but for* its specific exemption by a reasonably justified regulation.

For this reason, IBM's reliance on *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325 (11th Cir. 1998), and *Williams*, 927 F.2d at 11544-45, is unavailing. IBM argues that these cases noted that "payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage." *Whitt*, 147 F.3d at 1330. However, *Whitt* focused on the point at which beneficiaries could have determined their rights, not on the source of funding or an explicit

10

regulatory exclusion.  Similarly, although the *Williams* court found that an employer cannot circumvent ERISA by paying from its general assets that which the statute requires be paid from a separate trust, *Williams*, 927 F.2d at 1544, the court did not conclude that the payment of benefits from general assets is never relevant to the question of whether an ERISA plan exists, and did not discuss the payroll practices exemption.

IBM argues that the Program provides more than "traditional sick leave," but fails to offer a persuasive reason for why the Program's terms do not fit comfortably within the payroll practices regulation.  According to IBM, *Morash* stands for the proposition that ERISA coverage would exist for otherwise exempted practices where "either the employee's right to a benefit is contingent upon some future occurrence or the employee bears a risk different from his ordinary employment risk." *Morash*, 490 U.S. at 116.  First, this conflates rule and exception.  The question is whether the exception applies, not whether there is an exception to the exception that would allow the general rule to apply again.  Second, as the Secretary of Labor notes, IBM's definition of "contingency" would mean that the inclusion of "sick leave" in the payroll practices regulation is essentially meaningless.  All sick leave policies are "contingent" on an employee's inability to work for some medical reason.  *See Shea*, 810 F.2d at 376 (holding that

11

sick leave policy was a payroll practice in part because the employer paid the leave "without additional conditions or contingencies of any kind"). In *Morash*, the Court was not making a broad statement about what constitute "contingencies"; it was contrasting severance payments (contingent upon termination, and *not* explicitly covered by the payroll practices regulation) with vacation pay benefits (*not* contingent upon a future event, and explicitly covered by the regulation). *See Morash*, 490 U.S. at 115-16.

For the first time on appeal, IBM asserts that it annually files Form 5500 with the Department of Labor and the IRS identifying the Program as an ERISA plan. IBM offers no supporting documentation and the plaintiff strongly contests this assertion. The way in which an employer characterizes its plan may be one factor, among others, in determining ERISA coverage. *See, e.g.*, *Whitt*, 147 F.3d at 1331 ("[A]lthough not dispositive of the issue, we note that [the employer] never made an ERISA filing with the federal government . . . until after [the employee] was fired."). Nevertheless, even if IBM has treated the Program as an ERISA plan with respect to government filings, its mere labeling of the plan should not determine whether ERISA applies. *See McMahon*, 162 F.3d at 38. Allowing this could lead to a form of "regulation shopping." *Id.* Where, as here, an employer pays an employee's normal compensation for periods of mental or

12

physical disability entirely from its general assets, the program constitutes an exempted payroll practice under 29 C.F.R. § 2510.3-1(b) and not an ERISA plan.

A defendant may remove a case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally.  28 U.S.C. § 1441.  Because the IBM Program is exempted by regulation from ERISA, the doctrine of complete preemption is inapplicable and no federal question jurisdiction exists, *see Kemp v. Int'l Bus. Machs. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997), and removal to federal court was improper.

## III

We VACATE the order granting summary judgment to the defendant, REVERSE the order denying plaintiff's motion to remand, and REMAND with an instruction to return this case to the state court.