**Ali BASSIRI, Plaintiff,**

v.

**XEROX CORPORATION, Xerox Corporation Long–Term Disability Income Plan, Lawrence Becker, and Does 1–100, inclusive, Defendants.**

**No. CV 03–3597 DT.**

United States District Court, C.D. California.

Nov. 10, 2003.

Kathleen A. Brewer, Kathleen A. Brewer Law Offices, Westlake Village, CA, for Plaintiff.

Jeffrey F. Webb, Gibson Dunn & Crutcher, Los Angeles, CA, Richard J. Pautler, Rodney A. Harrison, Thompson Coburn, St. Louis, MO, Ronald K. Alberts, Courtney Culwell Hill, Berger Kahn, Los Angeles, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS XEROX CORPORATION, XEROX CORPORATION LONG–TERM DISABILITY INCOME PLAN, AND LAWRENCE BECKER'S MOTION TO DISMISS COUNTS I, V, VI, VII, VIII, IX, X, AND XI AND STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

TEVRIZIAN, District Judge.

## I. Background

### A. Factual Summary

Plaintiff Ali Bassiri ("Plaintiff"), a former employee of Xerox Corporation, brings this action against Defendants Xerox Corporation ("Xerox"), Xerox Corporation Long–Term Disability Income Plan ("LTD Plan"), and Lawrence Becker ("Becker") (collectively "Defendants") for Declaratory Judgment, Violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.; Violations of the California Fair Employment & Housing Act, California Government Code § 12920 et seq.; and Breach of Contract. The particular motions presently at issue before the Court in this Order are Defendants' Motion to Dismiss Counts I, V, VI, VII, VIII, IX, X, and XI, and Motion to Strike Portions of Plaintiff's Second Amended Complaint ("Motion").

The following facts are alleged in Plaintiff's Second Amended Complaint ("SAC"):

Plaintiff began his employment with Xerox in 1994 as a software engineer. Plaintiff worked for Xerox initially as a "contract worker" and became a full time employee in 1997. Plaintiff performed his duties with excellence and earned a promotion to a management position in 2000. In late 2000, Plaintiff's work environment and career trajectory began deteriorating when Gary Brown became Plaintiff's manager. Plaintiff was a quiet, hardworking, dedicated employee. However, because he is an Iranian-born Muslim, Plaintiff quickly became a target of Mr. Brown's disdain. Mr. Brown expressed to Plaintiff his dislike of Iran and Iranians. Mr. Brown began a perpetual habit of rebuffing, degrading and criticizing Plaintiff without provocation or justification. In 2001, despite Plaintiff's excellent performance, technical expertise and strong work ethic, Mr. Brown demoted him and stripped him of responsibility without cause.

In or about September 2001, Plaintiff began experiencing severe pain in his wrists and upper extremities. He had

been developing repetitive motion injuries because of his continuous work on a computer and at a workstation that required him to spend many hours everyday in a contorted position. Between September 2001 and January 2002, Plaintiff notified Xerox management several times of his physical condition. In January 2002, Plaintiff experienced a frightening incident in which he lost the use of his hand temporarily. Plaintiff informed management of the incident and sought medical help.

In or before January 2002, Plaintiff became disabled by severe bilateral carpal tunnel syndrome, with accompanying nerve, spinal, arm, wrist and shoulder injuries. On January 21, 2002, Plaintiff's doctor placed him on disability leave, and notified Xerox management that Plaintiff's disability required a leave of absence. The leave of absence was necessary to allow Plaintiff time for extensive physical therapy, surgery and recovery. Plaintiff hoped for a full or partial recovery that would allow him to return to his regular duties, or at least, to another job within Xerox.

During Plaintiff's disability leave, he was unable to engage in most everyday activities, including household chores, work at a computer, dressing himself, holding a telephone, lifting or carrying. In April 2002, Plaintiff underwent surgery for the carpal tunnel syndrome. Approximately one week after the surgery, Xerox management, knowing that Plaintiff required more time to recover, insisted that Plaintiff return to work with limitations.

Plaintiff reported to work on May 6, 2002, as required, with his arm in a sling. However, Human Resources manager, Perry Watson, ordered Plaintiff to go home until Mr. Watson obtained authorization for the return of work from Health International, the entity charged with making medical eligibility determinations for short and long term disability payments under the Xerox disability plans.

As instructed, Plaintiff left the workplace. On May 21, 2002, Plaintiff called Mr. Watson to find out when he would return to work and what accommodations would be made. Mr. Watson instructed Plaintiff to work the following day. Plaintiff went to work on May 22, 2002, as directed. However, instead of discussing accommodations, or any other aspects of his work, Mr. Brown terminated Plaintiff's employment, effective July 21, 2002. The decision to terminate Plaintiff's employment was motivated in part by Plaintiff's national origin, religion, and disability.

Xerox did not accommodate Plaintiff's disability, or engage in an interactive process with Plaintiff to determine what accommodations could be made. Had Xerox made a good faith attempt to accommodate the disability, many potential accommodations would have become obvious, including, but not limited to, providing more recovery time, altering the job duties, or transferring Plaintiff to another position.

*Facts Relating to the Xerox LTD Plan and Plaintiff's Enrollment in the Plan*

Prior to becoming disabled, Plaintiff had taken all prudent measures to be sure that his family would be provided for if he were to become unable to work due to a disability. Plaintiff enrolled in and paid premiums for, the Xerox LTD Plan and The Prudential Disability Income Plan. At the time of his disability, Plaintiff was a participant in both plans. Further, Plaintiff was eligible for short-term disability benefits under a separate Xerox plan. The disability program covered Plaintiff as follows: the first five months of disability were covered under the Xerox short-term plan; the next twenty-four months were covered under the Xerox LTD Plan at 60% of Plaintiff's salary and any remaining disability period was covered under the extended Prudential policy. Payments for the first twenty-nine months of disability

are made by Xerox from its general assets in the same manner and during the same pay periods as Xerox pays employees' salaries. Participants in the Xerox LTD Plan are required to make regular contributions, or "premiums." Plaintiff made all required contributions.

Materials disseminated to Plaintiff and other Xerox employees about the coverage they would obtain by enrolling in the LTD Plan included the following statements:

— "Disability coverage is essential to financial security. If you become disabled and can't work, you will need a source of continuing income to meet your basic needs. The disability income program is designed to provide competitive short-term and long-term disability benefits to meet this critical need." (SPD/Healthwise p. 94).

— "Disability coverage is more important than most employees think. Consider this: Probability experts predict that one in five people will become disabled for five years or more before they reach age 65... Are you confident that your disability coverage is enough to sustain your basic needs if you become disabled?" The materials then provide a formula for calculating "how much disability coverage is enough." (SPD/Healthwise p. 166).

The materials also indicate that a change in employment status can effect receipt of benefits if the change is initiated by the employee through a voluntary resignation or retirement. Nowhere do the materials state that a disabled employee will lose LTD benefits if he loses his job involuntarily. To the contrary, the materials affirmatively represent that the disability plans provide "a source of continuing income" "[i]f you become disabled and can't work."

Under the Xerox LTD Plan and the Xerox Short-term Disability (STD) Plan, the fiduciary and administrator responsible for making determinations of medical eligibility is Health International, Inc. Health International has no authority under the LTD Plan to make eligibility determinations with respect to non-medical issues. Under the LTD and STD Plans the fiduciary and administrator responsible for making certain non-medical eligibility determinations is Prudential Insurance Company of America. Prudential does not have authority under the Plan to make all non-medical determinations, but only specified determinations regarding a participant's compliance with certain conditions.

Prudential, Health International, Xerox and Becker are, and at all relevant times were, fiduciaries with respect to Plaintiff and owed to Plaintiff a duty to act with the highest standard of loyalty and solely in his interest. Under the terms of the LTD Plan, these fiduciaries may not follow the LTD Plan documents or directives that would lead to an imprudent result or that would harm plan participants. The duty of loyalty requires fiduciaries to act with single-minded devotion to the interests of LTD Plan participants, to provide truthful information about the LTD Plan, to follow statutory claims and review procedures, and to disregard plan documents or directives that the fiduciary knows or should know would harm participants.

*Fact Relating to the Termination of Plaintiff's Disability Benefits and Plaintiff's Appeals and Requests for Documents*

When Plaintiff became disabled, Health International determined that he was medically eligible for disability benefits. Therefore, Plaintiff received short-term disability benefits for the first five months of his disability period. When the short-term disability period ended, Health International determined that Plaintiff was still medically eligible for benefits. Therefore, he began receiving benefits under the Xerox LTD Plan.

Xerox management interfered with and attempted to stop Plaintiff's receipt of both short-term and long-term disability benefits. Management forced Plaintiff to return to work, urged Health International to terminate benefits, informed Plaintiff that he was no longer eligible for benefits when, in fact, he was eligible, and terminated Plaintiff's employment, in substantial part, to prevent Plaintiff's receipt of ERISA protected benefits.

On or about May 29, 2002, Mr. Watson informally told (via e-mail) Plaintiff that his LTD benefits would end when Plaintiff began his "salary continuance" (severance) period. However, Plaintiff never began a "salary continuance" period.

On July 19, 2002, Plaintiff's counsel wrote to Health International, Prudential and the Plan Administrator seeking clarification of Mr. Watson's statement regarding the termination of LTD benefits. With the letter, counsel supplied additional medical information and asked whether further information was necessary. No one responded to the July 19 letter.

Plaintiff's LTD benefits were terminated as of July 21, 2002, without prior notice. On July 22, 2002, Health International issued a notice of "non-Authorization." Although Health International had found Plaintiff medically eligible, it made a decision to terminate his LTD benefits. The reason given for the termination of benefits was: "Due to the fact that you [sic] employment has been terminated." Health International lacked authority under the Plan to terminate benefits for the reason given. The notice of termination was deficient under ERISA in that, among other things, it: did not supply specific reasons for the adverse determination; made no reference to the specific plan provision on which the determination was based; provided no information about the right to appeal; made no reference to the Plan's appeal procedures or to any time limita-

tions regarding appeal; did no notify Plaintiff of his right to bring a lawsuit. Further, the notice was grossly misleading in that it instructed Plaintiff to submit additional information to "the Health International RN," despite the fact that the termination of benefits was based on a non-medical reason.

On August 29, 2002, Plaintiff appealed the termination of his LTD benefits to Prudential, with a copy to Health International. On or about November 4, 2002, Prudential sent Plaintiff a letter that did not state its decision on appeal, but gave the reason for termination of benefits as follows: "Since your employment with Xerox was terminated effective July 21, 2002, you no longer remain eligible for benefits under the Xerox LTD Plan as of that date." Prudential's action exceeded its authority under the Plan and violated the requirements for reviewing initial determinations.

On November 25, 2002 Plaintiff again appealed the termination of benefits. On January 15, 2003 (beyond the applicable time period) Prudential responded to Plaintiff's appeal as follows: "We have determined that the initial decision for the termination of LTD benefits was appropriate and we have upheld this decision. Since Mr. Bassiri's employment with Xerox was terminated effective July 21, 2002 and he was separated from the company, he no longer remains eligible for benefits under the Xerox LTD Plan as of that date."

On numerous occasions between July 19, 2002 and January 9, 2003, Plaintiff requested information, clarification and documents (including Plan documents, the Plan's annual report, and documents pertaining to his claim) from the Plan Administrators. Defendants refused and failed to provide those documents in a timely manner, as follows:

— In the July 19, 2002 letter, Plaintiff requested in writing the following documents from the Plan Administrator: "1) Documents pertaining to the Xerox Corporations Long–Term Disability Income Plan, including the Plan itself and the current Summary Plan Description; 2) the document entitled, 'You and Xerox: Important Changes to Your Xerox Disability Coverage'; and 3) the operative contract between Xerox and Health International (entitled "Agreement to Provide," or similar designation)." Plaintiff received no response to the request.

— On August 29, 2002, Plaintiff requested from Prudential (with a copy to Health International): "all evidence and information (including the plan provision) relied on in denying my claim (terminating benefits); copies of all information relevant to my claim; copies of the Plan, Plan documents and Summary Plan Description (Human Resources has been asked for these but I have not received them)." Neither Prudential nor Health International provided documents in response to the August 29 request.

— On November 25, 2002, Plaintiff again (by a letter from his counsel) requested from Prudential all documents relevant to his claim, including his claim file, all documents relied on in making the adverse determination, Plan documents, the contract between Xerox and Prudential, correspondence, any master policy, group policy or insurance contract, or other documents.

— On December 2, 2002, Plaintiff's counsel again wrote to the Plan Administer requesting specific documents. A copy of the December 2 letter was sent to Xerox in-house counsel under a separate cover.

— On December 12, 2002, the Plan Administrator sent Plaintiff some of the documents he had requested on July 19, 2002, but provided none of the additional documents requested on November 25, 2002. The documents provided in the December 12 packet were: the LTD Plan, the SPD, and Addendum to the SPD (6/01) and the Xerox–Health International Agreement.

— By a letter postmarked December 23 (or 28), 2002, Prudential sent the claim file Plaintiff had been requesting since August 29, 2002, but provided no other documents.

— On January 9, 2003, Plaintiff's counsel wrote to Health International requesting Plaintiff's claim file and other documents relevant to his claim from Health International (including the specific Plan terms and any other documents relied on in making the adverse determination). On January 14, 2003, Health International provided "the records we have on file," which did not include many of the requested documents.

— On January 9, 2003, Plaintiff requested additional Plan Documents and documents relating to his claim from the Plan Administrator. A copy of the January 9 letter was sent to Xerox in-house counsel. The Plan Administrator never responded to the January 9, 2003 letter.

— Some of the documents requested, including annual reports and the Xerox–Prudential contract, have never been provided.

Plaintiff's SAC alleges the following causes of action against the various defendants as follows:

(1) Declaratory Relief against All Defendants;

(2) Violation of ERISA Duty to Provide Documents under 29 U.S.C. § 1132(a)(1)(A) against defendant Becker as Plan Administrator;

(3) Recovery of Benefits and Other Relief under ERISA 29 U.S.C.

§ 1132(a)(1)(B) against the Xerox LTD Plan;

(4) Violation of 29 U.S.C. § 1140 against defendant Xerox;

(5) Violation of the California Fair Employment and Housing Act against defendant Xerox;

(6) Violation of Public Policy against defendant Xerox;

(7) Breach of Contract against defendant Xerox;

Plaintiff brings the Eight, Ninth, Tenth and Eleventh Causes of Action only in the alternative and asserts them only if Plaintiff's claim based on the termination of his LTD benefits are found not to be governed by ERISA:

(8) Breach of Contract against defendant Xerox;

(9) Breach of the Covenant of Good Faith and Fair Dealing (Bad Faith Denial of Claim) against defendant Xerox;

(10) Fraud and Deceit against defendant Xerox;

(11) Negligent Misrepresentation against defendant Xerox.

## B. Procedural Summary

On May 21, 2003, Plaintiff commenced this action by filing his Complaint in the United States District Court for the Central District of California as Case No. CV 03–3597 DT (JWJx).

On June 5, 2003, Plaintiff filed his First Amended Complaint.

On August 13, 2003, the parties stipulated to an Order Extending the Time to File Defendant's Responsive Pleading.

On September 9, 2003, Plaintiff filed his Second Amended Complaint.

On October 10, 2003, Defendants filed their Notice of Motion and Motion to Dismiss Counts I, V, VI, VII, VIII, IX, and XI and Strike Portions of Plaintiffs' Second Amended Complaint.

On October 24, 2003, Plaintiff filed his Opposition to Defendants' Motion to Dismiss Certain Counts and Motion to Strike Certain Portions of the Second Amended Complaint.

On November 3, 2003, Defendants filed their Reply to Plaintiff's Opposition.

## II. *Discussion*

### A. Standards

**1. Motion To Dismiss Under FED. R. CIV. P. 12(b)(1)**

Federal courts are courts of limited jurisdiction. Federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). Thus, when a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins.,* 511 U.S. 375, 378, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). When determining subject matter jurisdiction, this Court may consider outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *See McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

**2. Motion to Strike Under FED. R. CIV. P. 12(f)**

A party may move to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f). The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *See Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S.

517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

■■■ Motions to strike are generally viewed with disfavor and are not frequently granted. *See Pease & Curren Ref., Inc. v. Spectrolab, Inc.*, 744 F.Supp. 945, 947 (C.D.Cal.1990). Further, courts must view the pleading under attack in the light more favorable to the pleader. *See California v. United States*, 512 F.Supp. 36, 39 (N.D.Cal.1981). Therefore, "[m]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 823 (N.D.Cal.1992).

## B. Analysis

### 1. The First Portion of Count I is Dismissed Because Xerox's LTD Plan is an Employee Welfare Benefit Plan Under ERISA

■■■ In Count I of his SAC, Plaintiff initially seeks Declaratory Judgment to establish that the LTD Plan is exempt from ERISA because it allegedly meets the Secretary of Labor's definition of a "payroll practice" under 29 C.F.R. § 2510.3–1(b)(2).

Defendants move to dismiss Count I, arguing that the LTD Plan is, as a matter of law, an employee welfare benefit plan under ERISA. Section 3(1) of ERISA, 29 U.S.C. § 1002(1), defines an "employee welfare benefit plan" as "any plan, fund, or program" established or maintained by an employer "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise," "medical, surgical, or hospital care or benefits, or benefits *in the event of sickness, accident, disability,* death or unemployment, or vacation benefits ...." *See* 29 U.S.C. § 1002(1) (emphasis added).

Here, Plaintiff argues that a Department of Labor regulation, 29 C.F.R. § 2510.3–1(b)(2) ("Regulation"), provides that the LTD Plan is a "payroll practice" and not an employee welfare benefit plan. *See* 29 C.F.R. § 2510.3–1(b)(2). The Regulation states that "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment)" is not an employee welfare benefit plan. *Id.* Plaintiff contends that Xerox's LTD Plan is unfunded and Xerox pays claims from its general assets. Plaintiff further contends that the term "normal compensation" includes payments of less than normal compensation, such as the 60% payments of an employee's normal compensation under the LTD Plan currently at issue. For support of this contention, Plaintiff cites to several Department of Labor ("DOL") PWBA Opinion Letters. *See* 93–27A, 94–40A, 93–02A, 93–20A, 92–18A. However, this Court disagrees with Plaintiff for several reasons.

First, Xerox's LTD Plan falls flatly within the statutory definition of an "employee benefit plan" under Section 3(1) of ERISA. Plaintiff does not contest that the LTD Plan does not fit within this definition, since the LTD Plan was established and maintained by Plaintiff's employer and it did provide benefits in the event of sickness, accident or disability.

Second, as noted by Defendant, every court to address whether the LTD Plan is an employee welfare benefit plan under ERISA has expressly stated that it is. At least two federal appellate courts and two federal district courts, including the Central District of California, have held that the LTD Plan is an ERISA plan. *See Lilenfeld v. Xerox Corp.*, 73 Fed.Appx. 387, 2003 WL 21787729 (11th Cir.2003) (Per Curiam) (stating that "Lilenfeld then

sought benefits under Xerox's Long–Term Disability Income Plan. The LTD Plan is an employee benefit Plan within the meaning of ERISA.")[1]; *Horton v. The Prudential Ins. Co. Am.*, Case No. 02–30439, at *2, 51 Fed.Appx. 928 (Per Curiam) (5th Cir.2002) (stating that, "Horton was a Xerox employee." The long-term disability plan in issue (LTD Plan) is an employee benefit plan under the Employee Retirement Income Security Act (ERISA)); *see also Benson v. Xerox Corp.*, 108 F.Supp.2d 1074 (C.D.Cal.1999), aff'd, 242 F.3d 380 (9th Cir.2000); *Krisher v. Xerox Corp.*, 102 F.Supp.2d 715 (N.D.Tex.1999), aff'd, 218 F.3d 744 (5th Cir.2000). Moreover, in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), the jurisdiction of the federal courts, including that of the Supreme Court, was based on the fact that the Black & Decker Disability Plan, one almost identical to Xerox's LTD Plan, was an employee welfare benefit plan governed by ERISA.

Plaintiff contends that the reasons why the cases cited above and why the Supreme Court, the Ninth Circuit, or the parties in *Black & Decker Disability Plan* did not consider the effect of the Regulation are not disclosed or addressed. According to Plaintiff, it could have likely escaped their notice. Essentially, Plaintiff contends that the various District Courts and Circuit Courts (including the Ninth Circuit), and the United States Supreme Court in *Black & Decker Disability Plan* missed the fact that they did not have subject matter jurisdiction. This Court cannot agree with Plaintiff's contentions, especially since Justice Stevens, who wrote the opinion and discussed the Regulation at length in *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) was on the Court that decided *Black & Decker Disability Plan*.

Third, the LTD Plan does not fall within the definition of the Regulation. The Regulation provides that "payment of an employee's *normal compensation*, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment)," is not governed by ERISA. *See* 29 C.F.R. § 2510.3–1(b)(2) (emphasis added). But under the LTD Plan, eligible employees receive only 60% of their normal compensation.

As stated above, Plaintiff cites to several DOL letters in support of his argument that the Regulation allows for 60% of an employee's normal compensation to constitute "normal compensation" as contained in the Regulation. However, Plaintiff's reliance upon these opinion letters is misplaced. In *Christensen v. Harris County*, 529 U.S. 576, 586–87, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), the Supreme Court stated that an agency's interpretation of its own regulation is entitled to deference, but this deference is warranted only when the language of the regulation is ambiguous. *See also Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1303 (11th Cir.2001) ("Because we find there to be no ambiguity in the regulation, no deference is accorded to the Department of Labor opinion letters concerning the regulation."). Here, there is no ambiguity in the Regulation as it clearly refers to the employee's normal compensation, nothing

---

**1.** Plaintiff relies on *Stern v. IBM*, 326 F.3d 1367 (11th Cir.2003) to support his reliance upon the Regulation. However, the Eleventh Circuit that decided in *Stern* that the IBM plan was not an employee benefit plan, held two weeks later that the Xerox LTD Plan was an employee benefit plan within the meaning of ERISA. *See Lilenfeld v. Xerox Corp.*, 73 Fed.Appx. 387, 2003 WL 21787729 (11th Cir. 2003) (Per Curiam).

more and nothing less. Moreover, even if the Regulation in question was ambiguous, the DOL letters would be entitled to deference only to the extent that they have "the power to persuade." *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655.

Finally, Plaintiff even pleads in his Complaint that Xerox's LTD Plan "is an employee benefit plan subject to suit under [ERISA] 29 U.S.C. § 1132(d)(1)" and only in the alternative, where the LTD Plan does not fall under Section 3(1) of ERISA, does Plaintiff set forth his other non-ERISA causes of action in place of his ERISA claims. (Complaint, 3.) Thus, this Court finds that Xerox's LTD Plan is an employee benefit plan governed by Section 3(1) of ERISA.

**2. Motion to Dismiss is Not Warranted at this Time With Regard to Plaintiff's Second Portion of Count I**

■ Also in Count I of his SAC, Plaintiffs argues that in the event the Court finds that ERISA applies, a Declaratory Judgment is still necessary because Plaintiff contends and Defendants deny that, Section 5.13(f) of the LTD Plan violates ERISA. Plaintiff contends that the LTD Plan offers and requires payment for coverage that does not exist, in violation of ERISA. Article 5, Section 5.13(f) states, "Benefits under this Plan will terminate on . . . the date the employment relationship terminates." Plaintiff argues that the LTD Plan insures participants against loss of income due to a disability that renders them unable to work, but provides that the coverage ceases the moment a participant becomes both disabled and unemployed. Thus, Plaintiff contends that ERISA does not permit such illusory coverage and

seeks this Court's judgment declaring that Article 5, Section 5.13(f) of the LTD Plan, and portions of Article 9, Section 9.4 violate ERISA.

In their Motion to Dismiss, Defendants initially fail to challenge this second basis of Plaintiff's Declaratory Relief claim contained in Count I. However, Defendants in their Reply offer reasons why Plaintiff's claim that the provisions of the LTD Plan violate ERISA should be stricken because they are without merit. First, Defendants argue that Xerox had the right to draft its LTD Plan however it wished, and it was within its rights to draft its LTD Plan such that a disabled employee who was terminated had no further right to LTD Plan benefits. Second, Defendants claim that welfare benefits such as disability benefits, unlike pension benefits, do not statutorily vest. Instead, it accrues each month. Finally, Defendants argue that when acting as employer, Xerox did not act as a fiduciary and owed no fiduciary duty to any LTD Plan participant.

Although this Court agrees that the case law pertaining to when an employer may terminate employment benefits somewhat favors Defendants' position, it appears to this Court that Plaintiff has pled sufficient allegations to state a claim and withstand a motion to dismiss at this time with regard to his second portion of Count I. Therefore, this Court will not strike or dismiss the second portion of Count I.[2]

**3. This Court Does Not Strike Plaintiff's Allegations Contained Within Subparagraphs 26(b), (c), and (g) and Subparagraph 41(c)**

■ Defendants ask this Court to strike those allegations contained in subpara-

---

**2.** This Court notes that it would defy logic if an employer could terminate a disabled employee simply to avoid responsibility under a LTD Plan. It would seem more logical to determine whether an employee had fully recovered from a disability, returned to work after being cleared to return to work and was later terminated.

graphs 26(b), (c), and (g) relating to Plaintiff's requests for documents made to Health International and Prudential rather than to the Plan Administrator because according to Defendants, requests made to non-party third-parties are irrelevant to a claim against the Plan Administrator. Defendants also request that this Court strike subparagraph 41(c), which alleges that failure to provide documents necessary to a full and fair review violates 29 U.S.C. § 1133 and subjects the Plan Administrator to a penalty under 29 U.S.C. § 1132(c)(1).

In pleading facts relating to his claims, Plaintiff describes numerous attempts to obtain "information, clarification and documents" relating to the reasons for the termination of his disability pay. Plaintiff claims that his SAC includes an account of Plaintiff's efforts to reinstate his benefits, including his attempts to obtain information. With that, Plaintiff states that a description of facts involving non-parties is permissible. Plaintiff also sets forth reasons why the failure to furnish the requested documents exposes the Plan Administrator to civil penalties and why Plaintiff's allegations contained in subparagraph 41(c) is proper. Accordingly, Plaintiff claims, and this Court agrees that Xerox has not shown that these allegations are "redundant, immaterial, impertinent or scandalous" as required to support a motion to strike. *See* Fed.R.Civ.P. 12(f). Thus, this Court denies Defendants Motion to Strike Subparagraphs 26(b), (c), and (g) and Subparagraph 41(c).

### 4. This Court Strikes Without Prejudice Portions of Plaintiff's Counts V, VI, and VII to the Extent They Relate to Xerox's LTD Plan Because They are Preempted by ERISA

In Counts V, VI, and VII, Plaintiff attempts to assert state and common law claims for alleged discrimination and harassment relating to his disability, national origin and religion, as well as his non-receipt of disability benefits. Defendants move to strike [3] these claims "to the extent that" these state law claims are preempted by ERISA § 514(a) because they are based on claims that Xerox's actions were motivated by an intent to interfere with or deprive Plaintiff of ERISA benefits.

In determining whether ERISA preempts state common law causes of action, the Supreme Court has focused on the employer's alleged motivation in terminating the employee, concluding that a claim is preempted when the complaint alleges that a reason for his discharge was his employer's desire to avoid paying him benefits under an ERISA plan. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (held that plaintiff's wrongful termination claim under Texas law was preempted by ERISA because the employee alleged that a reason for his discharge was his employer's desire to avoid paying him benefits under an ERISA plan). With that in mind, Defendants expressly note in

---

**3.** In their Motion, Defendants initially label their caption as if to "Dismiss". Counts V, VI, and VII. However, Defendants substantively argue to "Strike" Portions of Counts V, VI, and VII both in their Motion and in their Reply brief. For example, Defendants state the following in their Reply brief: "Defendants moved to *strike* the claims asserted in Plaintiff's Fifth, Sixth, and Seventh Causes of Action *to the extent that* those claims were

preempted by ERISA § 514(a)." (emphasis added). Further, in their Motion, Defendants note that they are not contending that Plaintiff's Fifth, Sixth, and Seventh causes of action are preempted to the extent these claims are based on some other motive, such as alleged disability, national origin, or religious discrimination. This Court will therefore interpret Defendants' Motion as a Motion to Strike Portions of Counts V, VI, and VII.

their Motion that they are not contending that Plaintiff's Fifth, Sixth, and Seventh causes of action are preempted to the extent these claims are based on some other motive, such as alleged disability, national origin, or religious discrimination.

Plaintiff concedes to Defendants' contentions and agrees to strike all references to disability benefits and Defendants' interference with Plaintiff's receipt of those benefits. Accordingly, this Court grants without prejudice Defendants' Motion to Strike Plaintiff's Fifth, Sixth, and Seventh claims to the extent these state law claims are preempted by ERISA § 514(a) because they are based on claims that Xerox's actions were motivated by an intent to interfere with or deprive Plaintiff of ERISA benefits. This Court will not Strike Plaintiff's remaining claims to the extent that they are based alleged disability, national origin, or religious discrimination.

### 5. Counts VIII, IX, X, and XI are Dismissed Without Prejudice Because They are Preempted by ERISA

Plaintiff agrees with Defendant that his common law causes of action, set forth in Counts VIII, IX, X, XI, would be preempted if the LTD Plan was governed by ERISA. Since this Court holds that the LTD Plan is an employee benefit plan under ERISA, these counts are dismissed without prejudice accordingly.

### 6. This Court Will Strike Plaintiff's Requested Relief to the Extent it Seeks Relief in Excess of That Permitted by ERISA

■ A party may move to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f). Defendants claim that this Court should strike all of Plaintiff's requests for extra-contractual relief, such as compensatory and punitive, because such relief cannot be recovered under ERISA. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). This Court agrees.

### III. *Conclusion*

For the foregoing reasons, this Court dismisses Plaintiff's first portion of Count I because this Court finds that the LTD Plan is an employee welfare benefit plan under ERISA and accordingly **grants without prejudice** Defendants' Motion to Dismiss as to the first portion of Count I pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

This Court **denies** Defendant's Motion to Dismiss with regard to Plaintiff's second portion of Count I seeking a "judgment declaring that Article 5, § 5.13(f) of the Plan, and portions of Article 9, § 9.4 violate ERISA."

This Court **denies** Defendant's Motion to Strike subparagraphs 26(b), (c), and (g), and subparagraphs 41(c).

This Court **grants without prejudice** Defendants' Motion to Strike portions of Counts V, VI, VII to the extent they relate to Xerox's LTD Plan because they are preempted by ERISA.

This Court **grants without prejudice** Defendants' Motion to Dismiss Counts VIII, IX, X, and XI because they are preempted by ERISA.

Finally, this Court **grants without prejudice** Defendants' Motion to Strike Plaintiff's extra-contractual relief.

IT IS SO ORDERED.